UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORRIS WEATHERSPOON,

    Plaintiff,

v.

SURJIT DINSA, JOHN KORNOWSKI,
NURSE MCGUIRE, ELIHE POTTS,
LILLEY CONRAD, AND DR. JINDELL

    Defendant.

Case No. 14-cv-12756
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER
ADOPTING REPORT AND RECOMMENDATIONS [46, 48],
DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [32],
GRANTING MOTIONS FOR SUMMARY JUDGMENT [18, 21],
DENYING MOTION FOR APPOINTMENT OF COUNSEL [50], AND
DENYING MOTION TO PUT INTO RECORD PLAINTIFF'S EXHIBITS [54]**

Morris Weatherspoon, a Michigan prisoner, filed this civil rights lawsuit pursuant to 42 U.S.C § 1983. (Dkt. 1, Compl.) He alleges that Defendants, employees of the Michigan Department of Corrections ("MDOC"), forcibly administered to him "powerful antipsychotic medications" which caused severe side effects, denied him medical care for ongoing dental problems, and denied him emergent care for an "abscessed" femur. All Defendants except Jindell filed motions for summary judgment based largely on Weatherspoon's failure to exhaust administrative remedies. (Dkts. 18, 21.) In the meantime, Weatherspoon filed a motion for default judgment against Dinsa. The motions were referred to Magistrate Judge R. Steven Whalen for a recommended disposition. Now before the Court are the Magistrate Judge's Reports and Recommendations, recommending that this Court deny Weatherspoon's motion and grant the Defendants' motions. Weatherspoon filed objections to the Reports. None persuade.

Accordingly, Weatherspoon's motion for default judgment will be denied and the Defendants' motions for summary judgment will be granted. In addition, Weatherspoon's motion for the appointment of counsel will be denied.

## I. BACKGROUND

Weatherspoon is currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan. The events giving rise to the Complaint occurred while Weatherspoon was confined at the Gus Harrison Correctional Facility in Adrian, Michigan. He asserts claims based on three discrete events.

First, Weatherspoon says that on June 21, 2013, Defendants Dinsa, Kornowski, and McGuire conspired to administer antipsychotic medication to him against his will. Second, Weatherspoon says that on June 24, 2013, Defendants Potts and Conrad withheld necessary dental care including "teeth cleaning and dentures." Lastly, Weatherspoon says that on September 11, 2013, Defendant Jindell denied him emergent care for an abscessed femur. Based on these events, Weatherspoon filed this lawsuit asserting claims under the Eighth and Fourteenth Amendments.

Defendants Conrad, Kornowski, McGuire, and Potts filed their motion for summary judgment on October 29, 2014. (Dkt. 8.) Shortly thereafter, on November 7, 2014, Dinsa filed his motion for summary judgment. (Dkt. 21.) In response, Weatherspoon filed several "motion[s] to dismiss" the summary-judgment motions. (Dkts. 26–31.) He also filed a motion for default judgment against Defendant Jindell, who has yet to be served. (Dkt. 32.)

Both motions for summary judgment rely on Weatherspoon's alleged failure to exhaust administrative remedies. The applicable MDOC policy provides that the grievance process begins with an attempt by the grievant to "resolve the issue with the staff member involved

within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control[.]" MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date July 9, 2007). Failing that, the grievant may file a Step I grievance; "Dates, times, places, and names of all those involved in the issue being grieved are to be included. . . ." (*Id.*) "A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response." (*Id.*) Finally, "A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response." (*Id.*)

There is record evidence regarding Weatherspoon's attempts to file grievances. Defendants attached a copy of a search for Weatherspoon's prior grievances in MDOC's grievance tracking database. (Dkt. 21-2, Database Capture.) Richard D. Russell, Manager of MDOC's Grievance Section, avers it is a "true and accurate copy[.]" (Dkt. 21-3, Russell Aff. at ¶ 6.) The database search contains records of Weatherspoon's grievances from May 2009 through October 20, 2014. (Database Capture; Russell Aff.) The database capture does not contain any information as to the content of Weatherspoon's grievances—only that they were filed, whether or not they were appealed, and when they were closed. (*Id.*)

The moving Defendants argue that there are no records of Weatherspoon filing grievances at any point near the times of the events involving them as alleged in the Complaint. (Dkt. 18 at 13; Dkt. 21 at 5.) According to Defendants, "[b]ased on the timeframe set forth in the grievance policy . . . a Step I grievance must be filed within about a week of the alleged incident." (Dkt. 18 at 13.) The events involving the moving Defendants occurred on June 18, 21, and 24, 2013. (*See* Compl. at ¶¶ 10–11.) The database capture reflects that MDOC received three

3

Step I grievances from Weatherspoon in 2013: October 10, October 23, and October 24, 2013. (Database Capture at PageID 219–20.)

Weatherspoon asserted in the Complaint that he "used the MDOC grievance process available at Gus Harrison Correctional Facility to try and solve the problem. On each event plaintiff was not sent a response stating that the grievance had been received or denied, maybe a couple and the plaintiff transferred to another MDOC facility." (Compl. at ¶ 13.) In his response to Dinsa's motion for summary judgment, he asserts that he did file a grievance with respect to the June 18 and 21 incidents but that the grievance coordinator "refused to respond to grievance form" (he does not specify whether the failure to respond consisted of a failure to provide a form or a failure to provide a substantive response.) (Dkt. 29 at 7.) He made the same argument in his response to the motion for summary judgment by Kornowski, McGuire, Potts, and Conrad. (*See* Dkt. 26 at 4; Dkt. 27 at 6; Dkt. 28 at 5; Dkt. 30 at 4.)

On August 4, 2015, Magistrate Judge Whalen entered his Report and Recommendation regarding the motions for summary judgment. (Dkt. 46.) The Magistrate Judge construed both motions as motions to dismiss and recommended that they be granted based on Weatherspoon's failure to exhaust administrative remedies. Specifically, the Magistrate Judge considered Weatherspoon's argument that there was no response to his Step I grievance such that he could file a timely Step II grievance and concluded that "notwithstanding any institutional failure to timely respond to a Step I grievance, Plaintiff was not precluded from proceeding to Step II and Step III after the response deadline expired" because the Policy Directive provides, "A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I *or if s/he did not receive a timely response*." (*Id.* at 9 (emphasis added).)

4

Also on August 24, 2015, Magistrate Judge Whalen entered his Report and Recommendation regarding the motion for default judgment. (Dkt. 48.) The Magistrate Judge recommended that the motion be denied based on the fact that there was no clerk's entry of default under Federal Rule of Civil Procedure 55(a). (*Id.* at 3.)

Weatherspoon filed objections to both Reports. (Dkts. 55, 56.) He attached additional objections to the Report on the motions for summary judgment to his "Motion to Court to Review and Put Into Record Plaintiff Exhibits Sent to the Court Regarding Case No. 2:14-cv-12789, *Weatherspoon v. George*." (Dkt. 54.)

## II. STANDARD OF REVIEW

The Court conducts a *de novo* review of those portions of the Reports to which Weatherspoon has objected. 28 U.S.C. § 636(b). The Court need not perform a *de novo* review of the Report's unobjected-to findings. *See Schaefer v. Modelski*, No. 13-CV-13669, 2014 WL 3573270, at *1 (E.D. Mich. July 21, 2014) ("Although a court must review timely objections to a magistrate judge's report and recommendation, a court may adopt, reject, or amend the portions of a report and recommendation to which no party properly objects." (citing Fed. R. Civ. P. 72(b)(3)); *Thomas v. Arn*, 474 U.S. 140, 150 (1985))); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012) ("The Court is not obligated to review the portions of the report to which no objection was made." (citing *Arn*, 474 U.S. at 149–52)).

In addition, the Sixth Circuit has noted that "while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1

(6th Cir. 2000). That is to say, "issues raised for the first time in objections to [a] magistrate judge's report and recommendation are deemed waived." *Id.* (citing *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996)); *see also Mitchell v. Cnty. of Washtenaw*, No. 06-13160, 2009 WL 909581, at *4 (E.D. Mich. Mar. 31, 2009) (citing cases to demonstrate that "Courts generally will not consider arguments on review that were not raised before the magistrate judge.").

### III. ANALYSIS

The Court will first address Weatherspoon's motion for default judgment and will then move to Defendants' motions for summary judgment. Because Weatherspoon's objections are not persuasive, the Court will adopt the Magistrate Judge's recommended dispositions.

#### A. Motion for Default Judgment

The Magistrate Judge concluded that Weatherspoon was not entitled to a default judgment against Jindell for two reasons: first, Jindell has yet to be served; and second, there has been no Clerk's entry of default against Jindell under Federal Rule of Civil Procedure 55(a). Weatherspoon filed two objections to the Report and Recommendation.

Weatherspoon first "objects to the [Magistrate Judge] as bias in nature" because Weatherspoon has made "reasonable efforts pursue prosecution[.]" (Dkt. 56, Obj. to Dkt. 48.) "Alleging that a judge is prejudiced against a party is a serious matter, and a person making such a claim ought to be able to back it up." *Lentz v. Loxton*, No. 12-12037, 2013 WL 2295456, at *3 (E.D. Mich. May 24, 2013). "Under 28 U.S.C. §§ 144 and 455, a judge must recuse [himself] if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990). Here, Weatherspoon alleges bias merely because the Magistrate Judge concluded that he was not

entitled to a default judgment. This does not come close to demonstrating bias. *United States v. Nelson*, 922 F.2d 311, 319–20 (6th Cir. 1990) ("Personal bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases." (internal quotation marks omitted)); *see also Lentz*, 2013 WL 2295456 at *3 ("The plaintiff has not [demonstrated bias] here; his only gripe is that the magistrate judge has denied him a default judgment to which he is not entitled."). Accordingly, Weatherspoon's first objection will be overruled.

Weatherspoon's second objection is that he believes that "Defendant Jindell is avoiding prosecution[.]" (Obj. to Dkt. 48 at 2.) But this is irrelevant to whether the clerk has made an entry of a default. That is the key prerequisite to a default judgment under Federal Rule of Civil Procedure 55(a), as the Magistrate Judge recognized in his Report. There has been no Clerk's entry of default since the Magistrate Judge issued his Report and Recommendation. Accordingly, Weatherspoon's second objection will be overruled.

**B. Motions for Summary Judgment**

The Magistrate Judge concluded that Weatherspoon had not exhausted his administrative remedies and therefore recommends that the Court dismiss Defendants Kornowski, McGuire, Potts, Conrad, and Dinsa without prejudice. Weatherspoon filed six objections to the Report (Dkt. 55) and expanded on those objections in an addendum to a different filing in the case (Dkt. 54). Most of the objections center on Weatherspoon's attempts to file grievances and the MDOC's alleged practice of interfering with the grievance procedure.

> The Prisoner Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA . . . . [I]nmates are not required to specially plead or demonstrate exhaustion in their complaints.' Instead, the failure to exhaust 'must be established by the defendants.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (citations omitted).

To satisfy the exhaustion requirement, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "When a prisoner makes affirmative efforts to comply with the administrative grievance process but does not succeed, [courts] analyze 'whether those efforts to exhaust were sufficient under the circumstances.'" *Peterson v. Cooper*, 463 F. App'x 528, 530 (6th Cir. 2012) (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). In *Peterson*, the Sixth Circuit held that the plaintiff's attempts to exhaust were sufficient where

> Peterson requested a Step II form on three occasions and informed the grievance coordinator that he did not receive the form that she sent on September 21, 2006, but she did not send him another copy . . . [and] [t]he steps proposed by the defendants—that Peterson should have requested the form from another source or filed his appeal without the required form—are not found in, and in fact conflict with, the prison's grievance procedure.

*Id.* at 530. By contrast, the *Peterson* plaintiff's attempts to exhaust were not sufficient where he failed to comply with the MDOC's requirement that a grievance contain the "[d]ates, times, places and names of all those involved in the issue being grieved." *Id.*

District courts in this circuit have held that database search captures like the one Defendants presented here are sufficient to carry a defendant's burden[1] to prove non-exhaustion.

---

[1] The Court recognizes that the Magistrate Judge construed the motions as unenumerated motions to dismiss, rather than as summary-judgment motions as in *Wengorovius* and *King*. But "whether categorized as a 12(b)(6) motion or otherwise, the underlying question in this motion is whether the Defendants have carried their burden of showing that the Plaintiff failed to exhaust

8

*See, e.g.*, *Wengorovius v. Corizon Corp.*, No. 12-CV-13053, 2013 WL 449913, at *6 (Jan. 16, 2013) *report and recommendation adopted*, 2013 WL 450127 (E.D. Mich. Feb. 6, 2013); *King v. Bell*, No. 09-10001, 2009 WL 4646079, at *3 (E.D. Mich. Dec. 7, 2009). Moreover, Defendants filed a supporting affidavit in which Russell avers that the database capture is authentic. *See Ward v. Luckey*, No. 12–14875, 2013 WL 5595350, at *5 (Sept. 5, 2013) ("A supporting affidavit does more than authenticate the Database Report: it is critical evidence that the Report includes every one of Ward's Step III grievances received by the Grievance and Appeals Section in Lansing. Thus in some cases, a Database Report, standing alone, will not be evidence of non-exhaustion that no reasonable jury would be free to disbelieve." (citation and internal quotation marks omitted)), *report and recommendation adopted*, 2013 WL 5595350 (E.D. Mich. Oct. 11, 2013).

Here, Weatherspoon admits that he did not complete the grievance process. (Compl. at ¶ 13.) And Defendants have presented an authenticated database capture showing that no grievances were received during the relevant time period. The Court thus finds that no reasonable jury would find that Weatherspoon exhausted his administrative remedies.

So the question becomes whether Weatherspoon's failure to exhaust should be excused for the reasons he cites in his objections. He raises five: that (1) he "filed grievances against Defendants and placed the grievances inside [the] box outside the chow hall" (Dkt. 55, Obj. to Dkt. 46 at 1); (2) that one Dr. Collier "suggested Plaintiff continue with grievances against . . . prison officials with suggestion to sign off on grievance Plaintiff filed which upon information and belief Plaintiff did not" (*id.* at 1); (3) that certain unnamed MDOC officials "interfere,

---

his administrative remedies. If they have, then the unexhausted claims must be dismissed without prejudice." *Cook v. Caruso*, No. 09-10892, 2011 WL 768112, at *2 (E.D. Mich. Jan. 25, 2011) *report and recommendation adopted by*, 2011 WL 768076 (E.D. Mich. Feb. 28, 2011).

9

intentionally or otherwise," with grievance records, specifically, that when he filed Step I grievances, "the grievance coordinator never responded or assigned an I.D. numbers that are required to file step II" (Dkt. 54 at PageID 424); (4) that he "made an effort to exhaust" while in the segregation unit of the prison (Obj. to Dkt. 46 at 2); and (5) that "Plaintiff complied with the remedy offered to submit grievances and all reasonable efforts to proceed at Step I, II, and III consistent with the MDOC grievance procedure within a reasonable time periods" (*id*).

None of Weatherspoon's objections persuade the Court that a reasonable jury could excuse his failure to exhaust. It is true that the Sixth Circuit has stated that allegations of interference with the grievance procedure by MDOC officials may warrant the denial of summary judgment on exhaustion grounds. *Cf. Surles v. Andison*, 678 F.3d 452, 457 (6th Cir. 2012) (holding that "a dispute of material fact exists as to whether Defendants or other MDOC employees prevented Surles from filing grievances and exhausting his administrative remedies" where the prisoner alleged he had been placed on "modified access" for three months). But Weatherspoon's claims of interference are vague. It is unclear when Weatherspoon filed his grievances in the chow hall or what incidents they pertained to, and it is also not apparent which Defendants and/or events the grievance that Dr. Collier received pertained to. It is troubling if Weatherspoon did not receive grievance numbers for some of his Step I grievances. But Weatherspoon provides no factual context for the grievance coordinator's failure to assign grievance numbers. When did that occur? What was the content of the grievances? Did that content pertain to the claims raised in this case? Were those grievances even against Defendants? The Court finds that Weatherspoon's assertions regarding his efforts are simply too vague to excuse his admitted failure to exhaust. *See Peterson*, 463 F. App'x at 530 ("Summary judgment was proper, however, as to Embry and Huss, who were not named in Peterson's Step I grievance

or the Step III grievance that he attempted to file."). Accordingly, his objections relating to his efforts to exhaust administrative remedies will be overruled.

Weatherspoon next argues that "Doc. No. 25–35 is a sham[.]" (Obj. to Dkt. 46 at 1.) Docket entries 25 through 35 consist largely of Weatherspoon's own filings in response to the pending motions for summary judgment, so the purpose for Weatherspoon's assertion is unclear to the Court. Weatherspoon also says that he tried to obtain the assistance of a legal writer for the purpose of this litigation, but that assistance was denied. But Weatherspoon clearly did obtain a legal writer with respect to his objections because the additional objections attached to the motion asking the Court to review the records from his other case were prepared by a legal writer. Therefore, these objections will also be overruled.

## IV. ADDITIONAL MOTIONS

Weatherspoon recently filed two motions: a motion to appoint counsel (Dkt. 50) and a motion to "put into record" the exhibits from another case he has pending in this district (Dkt. 54). Having considered the motions, the Court will deny both, but will allow Weatherspoon to renew his motion to appoint counsel if his claims against Jindell survive dispositive motion practice.

### A. Motion for Appointment of Counsel

The appointment of counsel in a civil case falls within the discretion of the district court. 28 U.S.C. § 1915(d) ("The court may request an attorney to represent any such person unable to employ counsel . . . ."); *see also Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992). "Appointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993) (citations omitted). "In determining whether 'exceptional circumstances' exist, courts have

examined 'the type of case and the abilities of the plaintiff to represent himself,'" which "generally involves a determination of the 'complexity of the factual and legal issues involved.'" *Id.* at 606. The Sixth Circuit has commented that "[a]ppointment of counsel pursuant to 28 U.S.C. § 1915(d) is not appropriate when a pro se litigant's claims are frivolous, or when the chances of success are extremely slim." *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985) (citations omitted).

In support of his motion, Weatherspoon states that he "has a reasonable opportunity to prevail on the merits," is "indigent" and a "layman," is "presently confined to C/C/F administrative segregation," and is suffering "severe pain and mental distress[.]" (Dkt. 50 at 1–2.) It is true that Plaintiff has one claim remaining against Defendant Jindell, because Jindell has not appeared and has not filed any dispositive motions. But as the Magistrate Judge noted in a prior order denying a request for appointed counsel, "It is the practice of this Court to defer any attempt to obtain counsel for pro se civil rights Plaintiffs until after motions to dismiss or motions for summary judgment have been denied." (Dkt. 16 at 1.) On the current record, the Court does not see a reason to deviate from this practice. Therefore, with respect to the claims against Jindell, "Plaintiff's motion to appoint counsel is premature." (*Id.*) Accordingly, his motion will be denied without prejudice and if his claims against Jindell ultimately survive dispositive motion practice, he may renew his motion at that time.

### B. Motion to Put Exhibits into Record

Weatherspoon has moved for the admission into the record the exhibits from another case he filed in this District: *Weatherspoon v. George LNU, et al.*, No. 14-cv-12789 (E.D. Mich. filed July 3, 2014). Weatherspoon says that these exhibits support his motion for appointment of counsel. The Court has not found many examples of cases in which courts have relied on

exhibits submitted in related cases in deciding a motion in a different case. In *Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*, No. 99 CIV. 4677 (RJH), 2004 WL 2290499, at *1 (S.D.N.Y. Oct. 8, 2004), the Court relied on exhibits in a related case in its recitation of the facts because one of the parties had incorporated those exhibits by reference in its brief. However, the Court did not provide a legal basis for doing so. *Id.* at *1 n.1. By contrast, in *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 492 (C.D. Cal. 2014), the court granted a motion to strike a complaint's references to exhibits from another case, commenting that "courts typically hold that Rule 10(c) does not allow a party to adopt pleadings from a wholly separate action, even if that action is between the same parties." *Id.* (collecting cases). And in *Global Oil Tools, Inc. v. Barnhill*, No. CIV.A. 12-3041, 2013 WL 3070838, at *9 (E.D. La. June 17, 2013), the court allowed the plaintiff to incorporate allegations from another complaint into its second complaint where the cases "had been consolidated . . . for pretrial purposes" and thus "share[d] the same docket sheet and file under the same case number."

Here, Defendants have not opposed Weatherspoon's motion. And the Court is sympathetic to Weatherspoon's request because, as a prisoner, he may not have ready access to a photocopier or the funds to send duplicate copies of exhibits in different cases. Indeed, Weatherspoon states that he sent the originals of these exhibits to the Court for use in the *George LNA* case. (Dkt. 54 at PageID 422.) So, the Court has examined the *George LNA* exhibits in considering Weatherspoon's motion to appoint counsel.

Even so, the Court is satisfied that the outcome of the motion to appoint counsel would not change with the addition of those exhibits, especially given that Weatherspoon's motion for appointment of counsel was denied in that case. *Weatherspoon v. George LNU, et al.*, No. 14-cv-12789 (E.D. Mich. filed July 3, 2014) (Dkt. 66).

13

## V. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Kornowski, McGuire, Potts, and Conrad's Motion for Summary Judgment (Dkt. 18) is GRANTED.

IT IS FURTHER ORDERED that Dinsa's Motion for Summary Judgment (Dkt. 21) is GRANTED.

IT IS FURTHER ORDERED that Weatherspoon's Motion for Default Judgment (Dkt. 32) is DENIED.

IT IS FURTHER ORDERED that Weatherspoon's Motion to Appoint Counsel (Dkt. 50) is DENIED without prejudice.

IT IS FURTHER ORDERED that Weatherspoon's Motion to Review Exhibits (Dkt. 54) is GRANTED.

It follows that Defendants John Kornowski, Kimberly McGuire, Dr. Elihue Potts, Lilly Conrad, and Dr. Surjit Dinsa are DISMISSED from the case without prejudice.

SO ORDERED.

                               s/Laurie J. Michelson
                               LAURIE J. MICHELSON
                               UNITED STATES DISTRICT JUDGE

Dated: September 25, 2015

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 25, 2015.

                               s/Jane Johnson
                               Case Manager to
                               Honorable Laurie J. Michelson