UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORRIS WEATHERSPOON,
#471817,

                                    CIVIL ACTION NO. 14-12756

        Plaintiff,

                                     DISTRICT JUDGE LAURIE J. MICHELSON

v.

                                     MAGISTRATE JUDGE R. STEVEN WHALEN

SURJIT DINSA, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

On July 11, 2014, Plaintiff Morris Weatherspoon, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical conditions in violation of the Eighth Amendment. Before the Court is Defendant Rosilyn Jindal, P.A.'s[1] Motion for Summary Judgment [Doc. #100], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that Defendant Jindal be DISMISSED WITH PREJUDICE.

**I.    FACTS**

---

[1] Plaintiff misspells this Defendant's name as "Jindell." I will use the correct spelling in this Report and Recommendation. He also alleges that she is a physician. In actuality, she is a physician's assistant ("P.A"), not a doctor.

The events described in Plaintiff's complaint occurred while he was incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan. Plaintiff alleges that on September 11, 2013,  Defendant Jindal disregarded his request for emergency medical care, subjecting him to mental and physical pain and suffering, in violation of the Eighth Amendment. *Complaint* [Doc. #1], ¶ 12. This is the only factual allegation against Defendant Jindal.

In ¶ 13 of his complaint, Plaintiff concedes that he did not file Step III grievances regarding the incidents that form the basis of his lawsuit. He states that he did not do so because he "was not sent a response stating that the grievance had been received or denied...."

Portions of Plaintiff's medical records are appended to Defendant Jindal's motion as Exhibit A (filed under seal). The notes pertaining to P.A. Jindal's examination of Plaintiff on September 11, 2013 are contained at pp. 18-20 of that exhibit. They show that P.A. Jindal obtained a medical history and noted Plaintiff's subjective complaints and symptoms regarding leg pain. She reviewed a previous x-ray of Plaintiff's femur, and opined that an elevation that was present might represent an old healed trauma. She conducted a physical examination, and ordered a complete bilateral x-ray of the lower spine, scheduling a follow-up appointment for about a week later. In terms of her assessment and plan, P.A. Jindal wrote:

> "**Exostosis, site NOS** (726.91).
> Plan comments: Likely exostoses of the left thigh. Continue Tylenol at

medline prn for pain and inflammation. Also encouraged to purchase muscle rub and use warm compresses on the affected area. Pt. does not meet criteria for bottom bunk at this time pending results of the lumber x-ray. Will f/u to discuss x-ray results."

P.A. Jindal has also submitted her affidavit as Exhibit B. Referring to the medical records contained in Exhibit A, she describes the x-ray evaluation of Plaintiff's femur that was done in August, 2012, prior to his arrival at the Gus Harrison Facility, in which the radiologist opined that the mass on the femur was likely the result of an old healed trauma wound, with a low likelihood that it was pathological. *Jindal Affidavit*, ¶ 6. In August of 2013, Plaintiff was on a regular schedule of Tylenol, which he received at the Gus Harrison Facility. *Id*. ¶ 7. On August 26, 2013, based on a review of Plaintiff's medical "kites" (requests), P.A. Jindal reviewed his chart and scheduled an appointment. She also reviewed treatment notes generated when he was seen by a registered nurse on August 27, 2013. The nurse had ordered ice compresses, heat applications, and an elastic bandage, as well as educating Plaintiff as to stretching and exercises for the lower back. *Id*. ¶¶ 11-12.

P.A. Jindal saw Plaintiff on September 11, 2013, and, based on her examination and review of his records, opined that the mass was likely exostosis. *Id*. ¶¶ 13-14. She states, "Exostosis is the formation of new bone bumps or cysts on the surface of bone due to excess calcium. Conservative treatment of the condition is to observe the growth over time to determine if it is growing or getting worse and managing any related pain with medication." *Id*. ¶ 14. Based on her diagnosis, she continued Plaintiff on Tylenol for pain, and in addition to what was provided from his previous examination, recommended that

he purchase muscle rub at the prison commissary and use warm compresses. She also scheduled Plaintiff for a lumbar x-ray. *Id*. ¶ 15. However, Plaintiff was transferred to the Muskegon Correctional Facility the next day, after which, she states, "he was no longer my patient and I did not further see, evaluate[] or treat Weatherspoon for his leg complaints or any other medical condition." *Id*. ¶ 16.  Based on the medical records contained at p. 28 of Exhibit A. P.A. Jindal states that Plaintiff received back and femur x-rays at Muskegon on October 9, 2013, and that the reviewing physician "diagnosed the small elevation of bone in Weatherspoon's femur as a benign lesion, such as exostosis or an old healed trauma." *Id*. ¶ 17. P.A. Jindal states that when she examined Plaintiff on September 11, "there was no indication that the mass on his leg posed an urgent or emergent medical condition. Rather, based upon my physical examination of Weatherspoon and review of his medical history, the mass on Weatherspoon's leg appeared to be a benign exostosis. This diagnosis is supported by Weatherspoon's subsequent x-ray results in October, 2013." *Id*. ¶ 18. She concludes:

> "As already set forth, based upon my medical diagnosis, Weatherspoon was receiving the appropriate treatment for his condition. I do not believe Weatherspoon required further evaluation or treatment by a specialist to properly treat the condition on his left thigh. This is consistent with the courses of treatment prescribed by Weatherspoon's other treating medical providers, both before and since." *Id*. ¶ 21

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions or other

factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

Under the Eighth Amendment, prison and jail officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle,* 429 U.S. at 103-104; 97 S.Ct. at 290-291. A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Deliberate indifference to medical needs may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Estelle v. Gamble, supra; Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v.*

-6-

*Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition"). To make out a claim of deliberate indifference, a plaintiff must show that his or her treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). A "difference of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do[es] not state an Eighth Amendment claim." *Smith v. Sator,* 102 F. App'x 907, 909 (6th Cir.2004) (citing *Estelle*, 429 U.S. at 107).

While it might be arguable whether Plaintiff's leg condition was "sufficiently serious" to meet the objective prong, it did apparently cause some pain, so for purposes of this discussion, I will assume that he has met that standard. However, his Eighth Amendment claim falters on the subjective standard.

Defendant P.A. Jindal saw the Plaintiff on only one occasion. She reviewed Plaintiff's medical history, performed a physical examination, reviewed a previous x-ray and notes from previous treatments, and diagnosed a benign, non-emergency condition. She continued Plaintiff on Tylenol for pain, and recommended continuation of treatment that had previously been suggested, e.g., warm compresses and muscle rub. She also ordered x-rays and scheduled a follow-up appointment, although Plaintiff's transfer to the Muskegon Facility the next day ended his treatment relationship with P.A. Jindal.

Nevertheless, subsequent x-rays and examination at Muskegon confirmed her diagnosis. This cannot be considered the absence of treatment or the delay of treatment. To the contrary, P.A. Jindal exercised medical judgment in diagnosing the condition and providing treatment (and follow-up) that she considered medically indicated. Plaintiff has shown only that he disagrees with her decision not to refer him to a specialist. That is not enough to make out an Eighth Amendment claim. *Smith v. Sator*.  And even if we were to posit that P.A. Jindal was somehow negligent in opting not to refer the Plaintiff, that too would be outside the purview of the Eighth Amendment. *Sanderfer v. Nichols*. Under these facts, no rational trier of fact could find in Plaintiff's favor. Defendant Jindal is entitled to summary judgment.

Finally, I note that Defendant alternatively seeks summary judgment on the basis that Plaintiff did not exhaust his administrative remedies prior to filing suit, as required by 42 U.S.C. § 1997e(a). She has a point. As I explained in a previous Report and Recommendation in this case [Doc. #46], Plaintiff conceded in his complaint that he did not exhaust all three steps of the MDOC grievance process, arguing that he was not required to do so because he did not receive a timely Step I response. I rejected that argument. And although Plaintiff now, inconsistently, contends that an administrative procedure was not "available" because prison authorities withheld grievance forms, it is not necessary to address the exhaustion argument. 42 U.S.C. § 1997e(c)(2) permits the Court to dismiss a complaint on the merits, notwithstanding the plaintiff's failure to

exhaust, where it fails to state a claim on which relief can be granted. While this section literally describes the Rule 12(b)(6) standard, it has been applied equally to cases that cannot survive summary judgment. *See Bowen v. Cady*, 2010 WL 148843, fn. 2 (E.D. Mich. 2010)(Cohn, J.); *Clark v. Caruso*, 2010 WL 746417 (E.D. Mich. 2010)(Borman, J.); *Williams v. Rogers*, 2013 WL 5181115 (E.D. Mich. 2013)(Duggan, J.).[2]

---

[2] These cases all adopted the reasoning of Magistrate Judge Komives in fn. 2 of *Bowen v. Cady*, who analyzed § 1997e(c)(2) by analogy to exhaustion principles in habeas corpus cases, and in the context of promoting judicial economy:

> Although this provision directly addresses a claim for relief that fails to state a claim on its face, it is equally applicable where the case has already progressed to the summary judgment stage. This provision is akin to the habeas corpus rule which permits a court to dismiss unexhausted claims on the merits. Much like the habeas exhaustion requirement, the PLRA exhaustion requirement is designed to promote administrative and judicial efficiency, and to show respect for the states by allowing the states the first opportunity to correct constitutional errors. See, e.g., *Brown v. Toombs*, 139 F.3d 1102, 1103-04 (6th Cir.1998) (per curiam); *Sanders v. Elyea*, No. 96 C 4559, 1998 WL 67615, at *5 (N.D.Ill. Feb.10, 1998). And, as the habeas courts have noted, exhaustion of meritless constitutional claims does not promote these interests. See *Granberry v. Greer*, 481 U.S. 129, 135, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir.1987). Section § 1997e(c)(2) recognizes this fact, and is equally applicable notwithstanding the fact that this case is now before the Court on a motion for summary judgment. Accordingly, because as discussed below plaintiff's claims are without merit, the Court should grant summary judgment on the merits rather than require further exhaustion. Cf. *Bastek v. Federal Crop Ins. Corp.*, 975 F.Supp. 534, 536 (S.D.N.Y.1997) ("However, when one of the purposes is not furthered, exhaustion is normally not required."), aff'd, 145 F.2d 90 (2d Cir.1998), petition for cert. filed, No. 98-320 (Aug. 20, 1998); *Unger v. U.S. West, Inc.*, 889 F.Supp. 419, 424 (D.Colo.1995) ("If these purposes would not be furthered, then administrative exhaustion is fruitless."); *Coles Express v. New England Teamsters & Trucking Indus. Pension Fund*, 702 F.Supp. 355, 361

## IV.   CONCLUSION

I recommend that Defendant Jindal's Motion for Summary Judgment [Doc. #100] be GRANTED, and that she be DISMISSED WITH PREJUDICE.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

---

(D.Me.1988) ("Exhaustion of administrative remedies is not compelled where the policies it was intended to further are not implicated, as where there is no need for the superior expertise of an administrative body, where judicial economy would not be promoted and where the statutory scheme created by Congress would not be ignored.").

Within 14 days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than 20 pages in

length unless by motion and order such page limit is extended by the court.  The response

shall address specifically, and in the same order raised, each issue

contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: February 28, 2017

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on
February 28, 2017, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager

-11-