UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORRIS WEATHERSPOON,
#471817,

                         CIVIL ACTION NO. 14-12756

         Plaintiff,

                         DISTRICT JUDGE LAURIE J. MICHELSON

v.

                         MAGISTRATE JUDGE R. STEVEN WHALEN

SURJIT DINSA, et al.,

         Defendants.

_____/

**REPORT AND RECOMMENDATION**

On July 11, 2014, Plaintiff Morris Weatherspoon, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical conditions in violation of the Eighth Amendment. Before the Court is Plaintiff's Motion for Summary Judgment [Doc. #93], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be DENIED.

**I.   FACTS**

The events described in Plaintiff's complaint occurred while he was incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan. All Defendants except for Defendant Jindal have been dismissed. On February 28, 2017, I filed a Report and

Recommendation [Doc. #120], recommending that Jindal's motion for summary judgment be granted.

Plaintiff alleges that on September 11, 2013, Defendant Jindal disregarded his request for emergency medical care, subjecting him to mental and physical pain and suffering, in violation of the Eighth Amendment. *Complaint* [Doc. #1], ¶ 12. This is the only factual allegation against Defendant Jindal.

In response to the present motion [Doc. #103], Defendant Jindal incorporates the arguments and exhibits in her own motion for summary judgment [Doc. #100], pursuant to Fed.R.Civ.P. 10(c). In my Report and Recommendation to grant Defendant Jindal summary judgment [Doc. #120], I set forth as follows the following facts, based on Plaintiff's medical records and the affidavit of P.A. Jindal:

Portions of Plaintiff's medical records were appended to Defendant Jindal's motion as Exhibit A (filed under seal) to Doc. #100. The notes pertaining to P.A. Jindal's examination of Plaintiff on September 11, 2013 are contained at pp. 18-20 of that exhibit. They show that P.A. Jindal obtained a medical history and noted Plaintiff's subjective complaints and symptoms regarding leg pain. She reviewed an x-ray of Plaintiff's femur from approximately one month earlier, and opined that an elevation that was present might represent an old healed trauma. She conducted a physical examination, and ordered a complete bilateral x-ray of the lower spine, scheduling a follow-up appointment for about a week later. In terms of her assessment and plan, P.A. Jindal wrote:

"**Exostosis, site NOS** (726.91).
Plan comments: Likely exostoses of the left thigh. Continue Tylenol at
medline prn for pain and inflammation. Also encouraged to purchase
muscle rub and use warm compresses on the affected area. Pt. does not
meet criteria for bottom bunk at this time pending results of the lumber x-
ray. Will f/u to discuss x-ray results."

P.A. Jindal also submitted her affidavit as Exhibit B. Referring to the medical

records contained in Exhibit A, she describes the x-ray evaluation of Plaintiff's femur that

was done in August, 2012, prior to his arrival at the Gus Harrison Facility, in which the

radiologist opined that the mass on the femur was likely the result of an old healed trauma

wound, with a low likelihood that it was pathological. *Jindal Affidavit*, ¶ 6. In August of

2013, Plaintiff was on a regular schedule of Tylenol, which he received at the Gus

Harrison Facility. *Id*. ¶ 7.  On August 26, 2013, based on a review of Plaintiff's medical

"kites" (requests), P.A. Jindal reviewed his chart and scheduled an appointment. She also

reviewed treatment notes generated when he was seen by a registered nurse on August 27,

2013. The nurse ordered ice compresses, heat applications, and an elastic bandage, as

well as educating Plaintiff as to stretching and exercises for the lower back. *Id*. ¶¶ 11-12.

P.A. Jindal saw Plaintiff on September 11, 2013, and, based on her examination

and review of his records, opined that the mass was likely exostosis. *Id*. ¶¶ 13-14. She

states, "Exostosis is the formation of new bone bumps or cysts on the surface of bone due

to excess calcium.  Conservative treatment of the condition is to observe the growth over

time to determine if it is growing or getting worse and managing any related pain with

medication." *Id*. ¶ 14. Based on her diagnosis, she continued Plaintiff on Tylenol for pain,

and in addition to what was provided from his previous examination, recommended that he purchase muscle rub at the prison commissary and use warm compresses. She also scheduled Plaintiff for a lumbar x-ray. *Id*. ¶ 15. However, Plaintiff was transferred to the Muskegon Correctional Facility the next day, after which, she states, "he was no longer my patient and I did not further see, evaluate[] or treat Weatherspoon for his leg complaints or any other medical condition." *Id*. ¶ 16.  Based on the medical records contained at p. 28 of Exhibit A. P.A. Jindal states that Plaintiff received back and femur x-rays at Muskegon on October 9, 2013, and that the reviewing physician "diagnosed the small elevation of bone in Weatherspoon's femur as a benign lesion, such as exostosis or an old healed trauma." *Id*. ¶ 17. P.A. Jindal states that when she examined Plaintiff on September 11, "there was no indication that themass on his leg posed an urgent or emergent medical condition. Rather, based upon my physical examination of Weatherspoon and review of his medical history, the mass on Weatherspoon's leg appeared to be a benign exostosis. This diagnosis is supported by Weatherspoon's subsequent x-ray results in October, 2013." *Id*. ¶ 18. She concludes:

> "As already set forth, based upon my medical diagnosis, Weatherspoon was receiving the appropriate treatment for his condition. I do not believe Weatherspoon required further evaluation or treatment by a specialist to properly treat the condition on his left thigh. This is consistent with the courses of treatment prescribed by Weatherspoon's other treating medical providers, both before and since." *Id*. ¶ 21

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the

movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III.   DISCUSSION

Under the Eighth Amendment, prison and jail officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle,* 429 U.S. at 103-104; 97 S.Ct. at 290-291. A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

In my Report and Recommendation to grant summary judgment to Defendant Jindal, I found that Plaintiff had failed to establish the subjective prong of an Eighth Amendment violation–deliberate indifference–because the record indisputably shows that

-6-

Defendant Jindal provided a medical assessment and treatment, and made an informed decision not to refer him to a specialist. Plaintiff has shown nothing more than his disagreement with Defendant Jindal's course of action, which is insufficient to support a claim of deliberate indifference. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition"). To make out a claim of deliberate indifference, a plaintiff must show that his or her treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). A "difference of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do[es] not state an Eighth Amendment claim." *Smith v. Sator,* 102 F. App'x 907, 909 (6th Cir.2004) (citing *Estelle,* 429 U.S. at 107).

Put more simply: If Defendant Jindal gets summary judgment, it follows that Plaintiff must be denied summary judgment. Moreover, even if my Report and Recommendation to grant summary judgment to Jindal were rejected, there would still be issues of fact regarding the adequacy of her evaluation and treatment that would preclude granting summary judgment to Plaintiff.

# IV.   CONCLUSION

I therefore recommend that Plaintiff's motion for summary judgment [Doc. #93] be DENIED.

Any objections to this Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir.  1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.  1991); and *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.  1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: March 1, 2017

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 1, 2017, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager

-9-