UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORRIS WEATHERSPOON,

    Plaintiff,

v.

JINDELL,

    Defendant.

Case No. 14-cv-12756
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER DENYING MOTION FOR EXTENSION OF TIME [124], ADOPTING REPORT AND RECOMMENDATIONS [120, 122, 123], AND DENYING MOTIONS FOR ENFORCEMENT OF INJUNCTION AND TO ADMIT EVIDENCE [116, 117]**

Plaintiff Morris Weatherspoon is a Michigan prisoner proceeding *pro se*. He filed this Complaint against several medical professionals, who, he claims, forcibly administered to him "powerful antipsychotic medications" which caused severe side effects, denied him medical care for ongoing dental problems, and denied him emergent care for an "abscessed" femur. (*See* R. 1.) All defendants except physician's assistant Rosilyn Jindal (named as "Dr. Jindell" in the complaint) have been dismissed. (R. 59.) Weatherspoon claims that Jindal was deliberately indifferent to his serious medical need—treatment for his femur—in violation of his rights under the Eighth Amendment. The Court disagrees and will affirm the Magistrate Judge's recommendation to dismiss the case.

## I. BACKGROUND

Jindal is a physician's assistant ("PA") at Gus Harrison Correctional Facility. (R. 100-2, PID 882.) She evaluated and treated Plaintiff "regarding complaints of back pain and a mass on his left leg" one time in September 2013. (*Id.*) Jindal avers that she was able to review Plaintiff's

medical files before treating him. (*Id.* at PID 883.) Those files revealed that Weatherspoon had an x-ray of his left femur in August 2012, which revealed a mass. (*Id.* at PID 883.) The radiologist concluded that the mass "possibly represents old healed trauma . . . clinical correlation is recommended if other etiologies are of concern." (R. 102-1, PID 921.) Shortly thereafter, in September 2012, PA Michael P. Millette updated Weatherspoon's chart, stating, "Email correspondence with radiologist indicates that [Weatherspoon] should have a follow-up x-ray in three months. He reports that the likelihood of this being pathological is low." (*Id.* at PID 922.) It is unclear whether the follow-up x-ray was ever scheduled. Nonetheless, in August 2013, Nurse Laura Rock examined Weatherspoon following complaints of pain in the lower back and left knee. (*Id.* at PID 931.) Rock reported that she "palpated" a "mass . . . above left knee." (*Id.*) She stated it was "not noticeable while seated, or without palpitation" and there was "no guarding upon examination." (*Id.*) Rock ordered ice/cool compresses, heat applications, a bandage, and exercises in addition to the Tylenol that had already been recommended. (*Id.* at PID 932.)

Jindal examined Weatherspoon on September 11, 2013, after he requested a bottom bunk detail due to pain in his leg and back. (*Id.* at PID 937.) At that time, Weatherspoon reported pain in his left thigh radiating to his back. (*Id.*) Jindal reported, "Likely exostosas [*sic*] of the left thigh. Continue Tylenol . . . for pain and inflammation. Also encouraged to purchase muscle rub and use warm compresses on the affected area." (*Id.* at PID 938.) In her declaration, Jindal explained that "Exostosis is the formation of new bone bumps or cysts on the surface of bone due to excess calcium. Conservative treatment of the condition is to observe the growth over time to determine if it is growing or getting worse and managing any related pain with

medication." (R. 100-2, PID 884.) Jindal also ordered an x-ray of Weatherspoon's lower spine. (R. 201-1, PID 921.) This was the first and last time Jindal saw Weatherspoon. (*Id.* at PID 886.)

Weatherspoon was transferred to Muskegon Correctional Facility shortly after seeing Jindal. When he got to the next facility, PA Barbara Bien ordered x-rays of both his lower spine and his left thigh. (*Id.* at PID 946.) The radiology report from that x-ray stated, "Five views of the left femur demonstrates no displaced fracture or any other acute osseous abnormalities. No abnormal soft tissue densities were present. No radiopaque foreign bodies were present. . . . On the lateral projection of the distal femur, there is a small elevation of the bone cortex that is seen. It appears to be a benign lesion such as an extosis and possibly results from previous old healed trauma." (*Id.* at PID 947.)

Jindal moved for summary judgment on July 22, 2016, arguing that no genuine issue of material fact existed as to whether she was deliberately indifferent to Weatherspoon's leg issue, and in the alternative, Weatherspoon failed to exhaust his administrative remedies for this claim. (R. 100.) On February 28, 2017, Executive Magistrate Judge R. Steven Whalen entered his report and recommendation recommending that the Court grant Jindal's motion for summary judgment. (R. 120.)

## II. DISCUSSION

### A. Motion for Extension of Time (R. 124.)

At the conclusion of his report and recommendation, the Magistrate Judge informed the parties: "Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal." (R. 120, PID 1231.) Instead of filing timely objections, Weatherspoon submitted a motion to extend

signed on March 10, 2017, and entered in CM/ECF on March 17, 2017. (R. 124.) Weatherspoon says he needs an additional 60 days to file his objections because he is presently confined to administrative segregation and has additional litigation obligations in the case *Weatherspoon v. Thibault*, in which he "has a deadline to file [a] pretrial narrative statement[.]" (R. 124, PID 1250.) This request will be denied.

Weatherspoon stated in a different filing that he was placed in administrative segregation on January 30, 2017. (R. 119, PID 1080.) Yet, he was still able to organize and file over 100 pages of documents that he requested the Court enter into the record on February 6, 2017. (R. 119, PID 1081.) And this Court has already denied a motion for extension of time Weatherspoon previously filed due to Weatherspoon being confined in administrative segregation. (R. 52.) Moreover, the Court was able to access the docket in *Weatherspoon v. Thibault*, No. 14-cv-00108 (W.D. Mich. filed May 5, 2014). It appears that Weatherspoon has been able to file two objections, four affidavits, a motion for preliminary injunction, a letter, and two motions for an extension of time in that case since January 30. *Id.* (docket entries 124–130; 132–134).

Thus, the Court is not convinced that Weatherspoon did not have time to file objections in this case. Therefore, Weatherspoon's motion for extension of time (R. 124) will be DENIED.

**B. Report and Recommendation (R. 120, 122, and 123)**

The Magistrate Judge recommended granting summary judgment because Weatherspoon failed to demonstrate a genuine issue of material fact regarding Jindal's alleged deliberate indifference to his serious medical need. The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To demonstrate an Eighth

4

Amendment violation based on medical mistreatment, a prisoner must satisfy both objective and subjective components. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). "The objective component requires the existence of a 'sufficiently serious' medical need." *Blackmore*, 390 F.3d at 895. "The subjective component requires an inmate to show that prison officials have a sufficiently culpable state of mind in denying medical care." *Id.* (citation and internal quotation marks omitted).

The Magistrate Judge based his decision on the second prong. The Sixth Circuit "distinguish[es] between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). It is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.* However, "a desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014).

The Court finds that Jindal's actions fall within the *Lucas* and *Mitchell* line of cases. Jindal examined Weatherspoon, drew conclusions about his medical condition based on her physical exam and his treatment records, and ordered pain medication, warm compresses, and continued exercises. She also ordered a second x-ray, which was performed shortly after Weatherspoon was transferred to a new facility. This was not a complete lack of treatment. Weatherspoon believes that the mass in his thigh was actually a "tumor" as well as a "severe and

5

debilitating form of arthritis" and says that he made "repeat requests for [a] specialist[.]" (R. 112, PID 992.)

First, Weatherspoon offers no support for his assertions regarding what he feels is the proper diagnosis of the mass. And further, these assertions are belied by the summary-judgment record. Every treatment provider before and after Jindal concluded essentially the same thing about the mass: that it could have been the result of a prior injury and likely was non-pathological. And Jindal's notes do not contain any indication that Weatherspoon was distressed or in pain during the exam. Even so, Jindal still ordered a follow-up x-ray of Weatherspoon's thigh. Once that x-ray was performed, the radiologist confirmed Jindal's initial diagnosis of exostosis. Weatherspoon does not cite any evidence that a different provider later found that all of the previous providers were wrong about the mass in his thigh, but even if he had, that would not necessarily result in Eighth Amendment liability. *See Jones v. Muskegon Cty.*, 625 F.3d 935, 945 (6th Cir. 2010) (finding no constitutional violation where a provider misdiagnosed a prisoner with constipation but it turned out the prisoner had cancer).

Second, as the Magistrate Judge noted in his Report, the Eight Amendment "does not guarantee that a prison inmate receive the 'optimum or best medical treatment.'" *Faulkner v. Alexander*, No. 3:13-0654, 2014 U.S. Dist. LEXIS 81778, at *12 (M.D. Tenn. May 21, 2014) (citations omitted). Although Weatherspoon did not receive a referral to a specialist for his complaints, he did receive ongoing treatment over a period of years. *See Smith v. Sator*, 102 F. App'x 907, 909 (6th Cir. 2004) ("[D]ifferences of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do not state an Eighth Amendment claim.").

Accordingly, the Court agrees with the Magistrate Judge's conclusion that Plaintiff has failed to raise a genuine issue of material fact regarding the subjective prong of his deliberate

6

indifference claim. It follows that Weatherspoon could not meet the higher burden involved in his own motion for summary judgment. *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 430 (6th Cir. 2004). Moreover, once a plaintiff is transferred from the prison that allegedly violated his rights, requests for injunctive relief are generally "rendered moot." *Cardinal v. Metrish*, 564 F.3d 794, 799 (6th Cir. 2009) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)).

It follows that the Court ADOPTS the Magistrate Judge's recommended dispositions. (R. 120, 122, 123.) Therefore, Jindal's motion for summary judgment (R. 100) is GRANTED. Weatherspoon's motion for summary judgment (R. 93) is DENIED. Weatherspoon's motion for preliminary injunction (R. 90) is DENIED.

### C. Other Outstanding Motions (R. 107, 116, and 117)

To the extent they are not mooted by this Court's grant of summary judgment to Jindal, the Court will now address several outstanding motions filed by Weatherspoon. Weatherspoon's motion for relief from judgment (R. 107) will be DENIED because it was filed before a final judgment was entered in the case. *See Mallory v. Eyrich*, 922 F.2d 1273, 1277 (6th Cir. 1991); *Simmerman v. Ace Bayou Corp.*, 304 F.R.D. 516, 518 (E.D. Ky. 2015); *Daniel v. Granholm*, No. 06-14387-BC, 2007 WL 162840, at *1 (E.D. Mich. Jan. 17, 2007). Weatherspoon's motion for enforcement of injunction (R. 116) will be DENIED because there is no injunction in place in this case and the Court has denied Weatherspoon's motion for a preliminary injunction. The Court will also DENY Weatherspoon's motion to admit evidence into the record in opposition to Jindal's motion for summary judgment. (R. 117.) Plaintiff's response to Jindal's motion for summary judgment was due on September 2, 2016, over three months before he filed the motion to admit evidence. (R. 105.) Weatherspoon does not explain why he could not have attached the

documents to his summary-judgment response, which he filed late (without seeking leave) on November 7, 2016. (R. 112.) This is especially true where many of the documents are dated before his summary-judgment response was filed. Lastly, even if the Court were to accept these documents, it appears that only one is directly relevant to this case—Jindal's responses to Weatherspoon's interrogatories. (*See* R. 117, PID 1064.) And while Weatherspoon also attached a grievance regarding his inability to obtain his medical records, the relevant records were actually attached to Jindal's motion. (R. 102.) Therefore, Weatherspoon's motion to admit evidence (R. 117) will be DENIED.

### III. CONCLUSION

For the reasons set forth above, IT IS ORDERED that Weatherspoon's motion for an extension of time (R. 124) is DENIED.

IT IS FURTHER ORDERED that Jindal's motion for summary judgment (R. 100) is GRANTED.

IT IS FURTHER ORDERED that Weatherspoon's motion for summary judgment (R. 93) is DENIED. Weatherspoon's motion for preliminary injunction (R. 90) is DENIED.

IT IS FURTHER ORDERED that Weatherspoon's motion for relief from judgment (R. 107) is DENIED

IT IS FURTHER ORDERED that Weatherspoon's motion for enforcement of injunction (R. 116) is DENIED.

IT IS FURTHER ORDERED that Weatherspoon's motion to admit evidence (R. 117) is DENIED.

It follows that the complaint against Jindal is DISMISSED WITH PREJUDICE. As Jindal was the last remaining defendant in this action, this order will resolve the case. Accordingly, a separate judgment will follow.

SO ORDERED.

Dated: March 21, 2017

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 21, 2017.

s/Keisha Jackson
Case Manager